Filed 6/5/14  Sullivan's Stone Factory v. State Compensation Ins. Fund CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| SULLIVAN'S STONE FACTORY, INC., | |
| Plaintiff and Appellant, | E054813 |
| v. | (Super.Ct.No. INC067430) |
| STATE COMPENSATION INSURANCE FUND, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge. Affirmed.

Chadwick J. Bradbury for Plaintiff and Appellant.

Judith D. Sapper, Betty R. Quarles, Isabel C. Lallana, and Tony M. Chang for Defendant and Respondent.

Plaintiff Sullivan's Stone Factory, Inc. (Sullivan) purchased all of the assets of an entity called Cortima Co. (Cortima).  It also hired most of Cortima's former employees.

1

Under these circumstances, when Sullivan applied for worker's compensation insurance, California law required that Sullivan be treated as if it were Cortima. In particular, Sullivan was subject to Cortima's "experience modification" — a multiplier that increases or decreases the premium an employer must pay, depending on whether its claims history is worse or better than that of other employers in the same industry.

Sullivan submitted an application to defendant State Compensation Insurance Fund (SCIF) in which it represented — falsely — that fewer than half of its employees were former Cortima employees. That application was rejected. Sullivan then submitted another application, through its insurance agent, that was essentially identical; thus, it repeated the false representation that fewer than half of Sullivan's employees were former Cortima employees. Sullivan's insurance agent also submitted a document stating that the transaction between Sullivan and Cortima was "[a]ssets [o]nly" and that questions about how many Cortima employees Sullivan had hired simply did not apply.

Based on these representations, SCIF issued a policy to Sullivan and estimated the annual premium at less than $50,000. A month or so later, however, the Workers' Compensation Insurance Rating Bureau (Bureau) notified SCIF that Sullivan was subject to Cortima's experience modification because more than half of its employees were actually former employees of Cortima. This ultimately increased Sullivan's premium by 57 percent.

In this action, Sullivan seeks to hold SCIF liable for failing to disclose that Sullivan would be subject to Cortima's experience modification. The trial court granted

2

summary judgment against Sullivan and in favor of SCIF; it found that SCIF had proved that it did not know that Sullivan would be subject to Cortima's experience modification, precisely because it was relying on the misrepresentations by Sullivan and/or Sullivan's agent.

Sullivan appeals. We find no error. Indeed, we congratulate the trial judge (the Honorable John G. Evans) on spotting this dispositive issue, even though it was well-camouflaged amidst the parties' numerous arguments and voluminous evidence.

I

LEGAL BACKGROUND

The Bureau uses data submitted by workers' compensation insurers "to develop an 'experience modification factor' for each qualified employer. That factor plays a part in calculating the employer's workers' compensation insurance premium." (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1501.)

The Bureau has adopted an "Experience Rating Plan," set forth in administrative regulations at California Code of Regulations, title 10, section 2353.1. Every workers' compensation insurer must adhere to the Bureau's experience rating plan. (Ins. Code, § 11734, subd. (a).)

The Bureau's experience rating plan requires that past experience must be used in future experience ratings, unless there has been *both* a "material change in ownership" *and* a "material change in operations or employees . . . ."

3

A material change in ownership occurs when all or most of the assets of one entity are sold, transferred, or conveyed to another entity. It is undisputed that, in this case, there was a material change of ownership. It is equally undisputed that there was *not* a material change in operations. Accordingly, Sullivan was subject to Cortima's experience rating, unless there had been a material change in employees.

Subject to exceptions not relevant here, "a change in employees is material only if:

"(a) a majority of the employees who conduct the operations . . . for any period of time within the first ninety (90) days following the material change in ownership were not employed to conduct such operations for any period of time within the ninety (90) days immediately preceding the material change in ownership, and

"(b) a majority of the payroll earned by the employees who conduct the operations . . . for any period of time within the first ninety (90) days following the material change in ownership was earned by employees who were not employed to conduct such operations for any period of time within the ninety (90) days immediately preceding the material change in ownership."

II

FACTUAL BACKGROUND

The following facts are taken from the evidence offered in connection with SCIF's motion for summary judgment, supplemented by those allegations of Sullivan's complaint that have not been controverted by the evidence. (See *Brown v. Bleiberg* (1982) 32 Cal.3d 426, 438 [on motion for summary judgment, court may consider

allegations of the complaint to the extent that they are not controverted by affidavits on either side]; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1211 [party seeking summary judgment can rely on admissions of material fact made in opposing party's pleadings].)

In December 2004, Sullivan purchased all of the assets of Cortima. Sullivan assumed Cortima's lease and operated in the same location. Sullivan also hired most of Cortima's former employees.

On January 7, 2005, Sullivan submitted an application for worker's compensation insurance to SCIF. The application was signed by Robert Sullivan, the president of Sullivan.

The form asked, "Was this operation all or part of an existing business that was purchased or acquired?" Sullivan checked "Yes."

The form also asked, "Were more than 50% of the current employees hired since the acquisition?" Sullivan checked "Yes."

Finally, the form asked, "Are those new employees earning more than 50% of the payroll?" Again, Sullivan checked "Yes."

SCIF declined the application (for reasons unrelated to the issues in this appeal).

Downey, Cavadias & Deane, Inc. (Downey) is an insurance broker. Marco Martinez was an employee of Downey. Sullivan asked Martinez to help it obtain worker's compensation insurance.

5

Accordingly, on January 24, 2005, Martinez submitted a second application for worker's compensation insurance, on Sullivan's behalf, to SCIF. The application was signed by Martinez. However, it was essentially the same as Sullivan's previous application; statements in the first application were paraphrased or repeated verbatim in the second application. The same boxes were checked to indicate that more than 50 percent of the current employees had been hired since the acquisition, and that these new employees earned more than 50 percent of the payroll.

On January 27, 2005, SCIF told Martinez that it could not provide a quote until Sullivan filled out and returned a "Notice of Change of Ownership" form.

Martinez filled out the form and returned it to SCIF on January 31, 2005.[1] On it, he wrote, "This [*sic*] are two totally different entities. Sullivan[] . . . bought out from Cortima . . . their physical operations only. They did not acquired [*sic*] any existing business operations from Cortima . . . ." He also stated that it was an "[a]ssets [o]nly" transaction.

The form asked whether 50 percent or more of Cortima's employees also worked for Sullivan; Martinez wrote "N/A."

It also asked whether new employees earned more than 50 percent of the payroll; again, Martinez wrote "N/A."

---

**1** An officer of Sullivan signed the form. She testified, however, that when she signed it, it was blank, and she then returned it to Martinez.

A SCIF employee filled out a "Checklist for New Business Submissions" dated February 8, 2005. (Capitalization altered.) One of the items on the checklist was, "Prior SCIF policy – Is there a paid code 3 bill? Do we need payroll reports or audit and premium?" This item was marked "n/a." Above it was written, "Prior policy needs t[o] b[e] cancelled." This referred to Cortima's policy. A SCIF representative later explained: "If Cortima had sold off their business or assets or whatever, and the new operation was not taking over the policy, we would cancel the prior policy."

On February 17, 2005, SCIF sent Martinez a summary of proposed policy terms, including an "[e]stimated [a]nnual [p]remium" of $48,682.

On February 21, 2005, Sullivan signed the summary and accepted the terms.

On March 9, 2005, SCIF issued a worker's compensation policy to Sullivan. Once again, it listed an "[e]stimated [a]nnual [p]remium" of $48,682. (Capitalization altered.) It also stated, "The premium shown . . . is an estimate. The final premium will be determined after this policy ends by using the actual premium basis and the proper classifications, rates and rating plans that lawfully apply to the business and work covered by this policy."

On March 10, 2005, SCIF forwarded Sullivan's "Notice of Change of Ownership" form to the Bureau.

On March 24, 2005, the Bureau notified SCIF that Sullivan was subject to Cortima's experience modification. It explained: "This conclusion is based on our determination that a majority of the employees conducting the operations purchased by

7

[Sullivan] during the ninety (90) days after the sale were also employed by Cortima . . . during the ninety (90) days before the sale."[2]

Ultimately, being subject to Cortima's experience modification increased Sullivan's premiums by 57 percent.

III

PROCEDURAL BACKGROUND

The operative complaint alleged that SCIF failed to disclose to Sullivan that Sullivan would be subject to Cortima's experience modification.  It asserted causes of action against SCIF for:  (1) concealment in violation of Insurance Code sections 330 through 339; (2) fraud; (3) deceit; and (4) negligent nondisclosure.[3]

SCIF cross-complained against Sullivan for nonpayment of premiums.

SCIF moved for summary judgment on the complaint, on numerous alternative grounds; one of these was that Sullivan had misled SCIF about how many former employees of Cortima it had hired.

After hearing argument,[4] the trial court granted summary judgment on the complaint in favor of SCIF.  It reasoned that SCIF was entitled to rely on Sullivan's

---

**2**     The record does not indicate how the Bureau discovered this.

**3**     Downey and Martinez were also named as defendants.  They brought a separate motion for summary judgment, which the trial court granted.  That ruling is the subject of a separate appeal.  (*Sullivan's Stone Factory, Inc. v. Downey, Cavadias & Deane, Inc.*, Case No. E054256.)

**4**     Neither side has asked that a reporter's transcript of the hearing on the motion for summary judgment be included in the appellate record.  We therefore presume

*[footnote continued on next page]*

8

representations.  It proceeded to hold a bench trial on the cross-complaint.  After taking evidence, it ruled in favor of SCIF, awarding SCIF $85,363.20, plus interest, against Sullivan.  It then entered judgment accordingly.

IV

DISCUSSION

Sullivan alleged that SCIF failed to disclose that Sullivan would be subject to Cortima's experience modification.  The problem with this — as the trial court ruled — is that Sullivan affirmatively misrepresented that more than 50 percent of its employees had been hired since it acquired Cortima, and that those new employees made up more than 50 percent of its payroll.[5]  Based on this misrepresentation, SCIF had no reason to suppose that Sullivan would be subject to Cortima's experience modification, and hence no reason to disclose this to Sullivan.

Sullivan argues that SCIF nevertheless had a duty to disclose, for three reasons.

First, Sullivan argues that "SCIF failed to follow its own underwriting checklist . . . ."  However, there was no *testimony* to this effect.  Rather, it is an inference that Sullivan asks us to draw from the checklist itself.  Sullivan argues that the checklist

---

*[footnote continued from previous page]*
that nothing that occurred at the hearing was material to the issues raised on appeal.  (Cal. Rules of Court, rules 8.120(b), 8.163.)

[5]      Some of these misrepresentations were made through Martinez, acting as Sullivan's insurance agent.  Sullivan does not dispute that it was legally responsible for those misrepresentations.

called for a payroll records check, and that a payroll records check would have revealed that Sullivan had hired most or all of Cortima's employees. But that is not a reasonable interpretation of the checklist.

The checklist says, "Prior SCIF policy – Is there a paid code 3 bill? Do we need payroll reports or audit and premium?" A "code 3 bill" is the final bill for a policy. (<http://www.statefundca.com/CustomerSupport/BillingCodes.asp>, as of Feb. 7, 2014.) "There are two different types of Code 3 bills . . . . One is audit-based (Code 3A), while the other is based upon . . . submitted payroll reports and officer premium adjustments (Code 3B)." (*Ibid.*) Accordingly, this checklist item called for payroll records only if: (1) the applicant had a prior policy, (2) the applicant had not yet paid the final bill for the prior policy, and (3) the final bill for the prior policy was based on payroll. Here, Sullivan did not have any prior policy, so this checklist item simply did not apply.

In any event, this is not an argument that SCIF had *actual* knowledge; it is an argument that SCIF *should have known*. Sullivan cites no authority for the proposition that a defendant can have a duty to disclose matters of which it has no actual knowledge. Quite the contrary, it quotes a case stating that fraud requires "knowledge of falsity." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.) It also cites another case, which states that a "duty to disclose may arise . . . where the defendant alone has knowledge of material facts which are not accessible to the plaintiff. [Citation.]" (*Borba v. Thomas* (1977) 70 Cal.App.3d 144, 154.) SCIF affirmatively proved that it lacked such knowledge.

10

Second, Sullivan argues that "Cortima's policy was still in effect, and . . . the cancellation of Cortima's policy was a requirement of the underwriting process." It does not explain why this is relevant. The point seems to be that SCIF knew that Sullivan and Cortima were essentially fungible, and therefore it knew (or, again, should have known) that Sullivan would be subject to Cortima's experience modification. The record, however, tells us exactly what SCIF knew. SCIF *did know* that Sullivan had purchased all of Cortima's assets. This fact, standing alone, meant that Cortima's policy should be canceled. However, SCIF *did not* know that Sullivan had hired Cortima's employees. Sullivan had affirmatively misrepresented that it had not. Thus, SCIF had no reason to think that Sullivan would be subject to Cortima's experience modification.

Third, Sullivan seems to argue that SCIF made a misrepresentation by issuing the policy based on an "[e]stimated [a]nnual [p]remium"; instead, SCIF should not have issued the policy until the Bureau had had a chance to examine Sullivan's "Notice of Change of Ownership" form and to determine the appropriate experience modification. Considering that it would have been a crime for Sullivan to operate without worker's compensation insurance (Lab. Code, § 3700.5), and that the "process" was already "taking longer than [Sullivan] expected," this argument is disingenuous. The policy itself expressly stated that the estimate was only an estimate, and that it was subject to adjustment up to and including the end of the policy period.

We do not mean to say that labeling the premium an "estimate" gave SCIF a safe harbor to mislead. In theory, even an "estimated" premium could rise to the level of a

11

misrepresentation, if it was not in the ballpark based on the information available to SCIF. Here, however, the estimate was too low because *Sullivan* affirmatively misled *SCIF*.

We therefore conclude that the trial court properly granted summary judgment.

V

DISPOSITION

The judgment is affirmed. SCIF is awarded costs on appeal against Sullivan.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
                                                                            J.

We concur:

RAMIREZ _____
                    P. J.

HOLLENHORST _____
                    J.

12